861 So.2d 181 (2003)
Susan McKneely FOWLER,
v.
Claude Ed FOWLER.
No. 2003-C-0590.
Supreme Court of Louisiana.
December 12, 2003.
Rodney C. Cashe, Cammie deShea, Stelly Richardson, Cashe, Lewis, Coudrain & Sandage, Hammond, for Applicant.
*182 Harry A. Johnson, III, Phelps Dunbar, Baton Rouge; Vincent A. Saffiotti, Downs & Saffiotti, Baton Rouge, for Respondent.
TRAYLOR, J.
In the instant case, we granted certiorari to determine whether the proceeds of a life insurance policy paid during the matrimonial regime of acquets and gains are the separate or community property of the beneficiary spouse. We conclude that life insurance proceeds are sui generis and not governed by codal principles which govern community property. We thus overrule Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956) and hold that life insurance proceeds received by a spouse during the existence of a matrimonial regime of acquets and gains are separate property.

FACTS AND PROCEDURAL HISTORY
Claude Ed Fowler and Susan McKneely Fowler were married on June 5, 1965. Their son, Claude E. Fowler, Jr., was born February 22, 1969. During the Fowler's marriage, the Mutual Life Insurance Company of New York issued three whole life insurance policies on Claude Fowler, Jr., totaling $500,000. The first policy, issued when Claude, Jr. was seventeen years old with a face amount of $100,000, was acquired on January 16, 1986; the second policy was issued on September 17, 1987 (1987 policy), with a face amount of $100,000; and the third policy was issued on February 3, 1988 (1988 policy), with a face amount of $300,000. In all three policies, Susan M. Fowler was designated as first beneficiary and Claude Ed Fowler was designated as second beneficiary. Although Susan Fowler retained all rights of ownership arising out of the three whole life policies, the last two policies reverted the right to designate a beneficiary to her son, Claude, Jr., upon his twenty-first birthday.
Claude Fowler, Jr. died in an automobile accident in March 1990, at the age of twenty-one, having never exercised the right to change the beneficiary on the 1987 and 1988 policies. Accordingly, the proceeds of all three policies were paid to Susan M. Fowler. Mrs. Fowler initially deposited the funds in a Prudential Annuity account in the name of Susan M. Fowler and, subsequently, in a Merrill Lynch account in the name of Susan M. Fowler.
In 1999, eight years after receiving the insurance proceeds, Susan Fowler filed a petition for divorce. A judgment of divorce was rendered on April 5, 1999, and Susan Fowler subsequently filed a community property partition suit on June 1, 1999. Although all claims arising out of the dissolution of the community were resolved by a written stipulation, the Fowlers reserved for a decision by the court the sole issue of whether $450,000 of the life insurance proceeds are the community or separate property of Susan M. Fowler.[1] After a partition hearing, the trial court declared the proceeds of the life insurance policies to be the separate property of Susan M. Fowler. On review, the Court of Appeal, First Circuit, affirmed. Fowler v. Fowler, 02-0222 (La.App. 1 Cir. 12/31/02), 834 So.2d 659. Mr. Fowler sought writs of certiorari with this court, which we subsequently granted. Fowler v. Fowler, 03-0590 (La.5/2/03), 842 So.2d 1089.

DISCUSSION
The only issue this court must decide is whether life insurance proceeds are *183 governed by the principles of community property. Mrs. Fowler argues that life insurance is sui generis, as established by a long line of jurisprudence which repudiates the Thigpen holding. We agree and find that life insurance proceeds are sui generis in this state, and thus subject to separate rules. Therefore, we overrule this court's decision in Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956), and extend to the instant situation the rationale of the long line of jurisprudence which treats life insurance proceeds as sui generis.
A life insurance policy is a legal contract between the policy owner and the insurance company. Dennis C. Cuneo, Life Insurance As An Estate Planning Tool, 23 LOY. L.REV. 59, 59 (1977). Life insurance contracts originate from common law countries; the French Civil Code in fact viewed life insurance as a form of gambling. Cuneo, at 69; Eugene A. Nabors, Civil Law Influences Upon the Law of Insurance in Louisiana, 6 TUL. L.REV. 369, 369 (1932). Consequently, the community property provisions of the Louisiana Civil Code were not drafted with insurance in mind; the legislature in the Louisiana Code of 1808 provided that insurance is "foreign to this code." Nabors, at 369-372. As a result, the legislature's failure to account for life insurance has resulted in irreconcilable principles between the rights of life insurance proceeds beneficiaries and traditional civilian principles. Louisiana jurisprudence has responded to this conundrum by traditionally finding that life insurance is sui generis and therefore not subject to many traditional civilian principles. Thus, the protection afforded to life insurance proceeds, although now adopted and codified in the Insurance Code, are the outgrowth of judicial precedent and not legislation. Mary Ticker v. Metropolitan Life Ins. Co., 11 Orleans App. 55 (1914); Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930).
As a result of the Civil Code's failure to address this problem, life insurance proceeds enjoy a status not accorded to other property in Louisiana. This court has repeatedly refused to extend the civilian principles enunciated by the Civil Code to the realm of life insurance proceeds. Thus, insurance proceeds are protected from the heirs and legatees of the insured, Nulsen v. Herndon, 176 La. 1097, 147 So. 359 (1933), Succession of Erwin, 169 La. 877, 126 So. 223 (1930); creditors of the insured, Succession of Porter, 4 Pelt. 200 (La.1921); claims for collation, Sherwood v. New York Life Ins. Co., 166 La. 829, 118 So. 35 (1928); actions for reduction; Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930); and form of donations inter vivos, La.Rev.Stat. Ann. § 22:1521.
It has long been settled authority that the disposition of life insurance proceeds are sui generis and subject to separate rules which may or may not coincide with the rules of the Civil Code generally applicable to community property. The jurisprudence has traditionally based this protection on the contractual nature of insurance. In Mary Ticker v. Metropolitan Life Ins. Co., 11 Orleans App. 55 (1913), a husband took out a life insurance policy during marriage, and subsequently changed the primary beneficiary from his wife to his mother. After his death, the decedent's wife and minor son attempted to claim the proceeds, which comprised the entirety of the estate. On rehearing, the Ticker court held that the decedent's change in beneficiary was effective based on the form provided by the policy. Id. at 59-60. Noting that the change in beneficiary was correct in form, the court awarded the proceeds to the mother over the claims of the decedent's widow and son. Id. The Ticker court justified the result on *184 the contractual nature of the insurance contract, stating:
For the contract, being lawful, must be given its effect according to the intention of the parties thereto; and we cannot for the purpose of defeating that intention apply to the contract provisions of law governing contracts of a different nature.
As we appreciate the jurisprudence of this State, a life insurance policy is a contract, sui generis, governed by rules peculiar to itself, the outgrowth of judicial precedent, and not of legislation. Id. at 60.
Likewise, in Sizeler v. Sizeler, 170 La. 128, 127 So. 388 (1930), this court refused to recognize the collation claims of a forced heir to receive proceeds vis-a-vis a beneficiary wife based on contractual provisions in the insurance policy. Following the rationale of Mary Ticker, the Sizeler court found that life insurance proceeds inure to the beneficiary directly, by the sole terms of the policy itself, and are not subject to the laws of donation mortis causa or donation inter vivos, stating:
As the proceeds of life insurance policies form no part of the estate of the deceased, and inure to the beneficiary directly and by the sole terms of the policy itself, the right of defendant to the avails of the policies in this case does not arise from legal coverture, nor from the civil effects of marriage contracted in good faith, but solely from the terms of the policies in which she has been named the beneficiary by the decedent.
Id. at 389. Accordingly, the Sizeler court refused to draw distinction between the classes of beneficiaries named in life insurance policies. Id. at 389-390.
More recently, this court addressed life insurance proceeds in T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1975) and Standard Life Ins. Co. v. Franks, 278 So.2d 112 (La.1973). T.L. James held that a son, as beneficiary of a life insurance policy, was entitled to life insurance proceeds above the claims of the decedent's widow and heirs. Id. at 847-848. This court specifically rejected the widow's argument that allowing a husband to separate life insurance proceeds from the estate circumvents the laws relating to forced heirship and community property. Id. Commenting on the nature of life insurance, the court stated:
It is well-settled in Louisiana that the proceeds of life insurance, if payable to a named beneficiary other than the estate of the insured, are not considered to be a part of the estate of the insured. They do not come into existence during his life, never belong to him, and pass by virtue of the contractual agreement between the insured and the insurer to the beneficiary. Life insurance proceeds are not subject to Civil Code articles relating to donation inter vivos or mortis causa, nor are they subject to community claims or the laws regarding forced heirship. (Citations omitted)
Id. at 847.
Finally, this court in Standard Life Insurance upheld an ex-wife's claim as beneficiary of a life insurance policy. In rejecting the argument that a catch-all phrase which conveyed to her husband all community assets not specifically described in the community settlement agreement, the court stated:
The death Benefits of the life insurance policy were never community property, for there was a named beneficiary other than the estate of the insured. Death benefits payable to one other than the estate are not part of the community of acquets and gains, and they were not made here part of that community through the settlement agreement. We need only examine the contract of insurance, *185 therefore, to determine to whom are due the funds on deposit. The contract of insurance contained a provision for the change of beneficiary. The deceased did not exercise the right to change the beneficiary. We need not inquire into whether he desired to changed the beneficiary, for we are bound by the unambiguous contract which names the beneficiary. Standard, 278 So.2d at 114.
Mary Ticker, Sizeler, T.L. James, and Standard clearly stand for the proposition that the disbursement to the beneficiary of life insurance proceeds are governed by the contractual provisions, and that Civil Code provisions are inapplicable. Although these cases are factually dissimilar from the instant case because they involve the devolution of an estate rather than the dissolution of community property, we believe the principles are the same. Thus, the rules of contract provide the primary basis for the protection traditionally afforded to life insurance proceeds in Louisiana.
Based on the foregoing cases, the principle that life insurance proceeds are sui generis has led Louisiana courts for decades to look to the provisions of the policies themselves and any pertinent portions of the Insurance Code to resolve disputes concerning such policies.
Applying these precepts to the instant case, the language in all three policies inure solely to Mrs. Fowler's benefit; Mr. Fowler is clearly named as a secondary beneficiary to receive proceeds only if Mrs. Fowler predeceased the insured. Although Mr. Fowler argues that the proceeds were not in dispute during the existence of the community and therefore the insurance company was not required to pay the proceeds to anyone other than the named beneficiary, we refuse to require Mrs. Fowler, as sole beneficiary, to split ownership of the proceeds upon termination of the community. Such a finding would derogate from the contractual provisions designating her right as sole beneficiary.
Moreover, the Thigpen court's reliance on those cases where the insured named his estate as beneficiary was erroneous. We find that the case sub judice is also distinguishable from that line of cases where the insured names his estate as beneficiary. See, Berry v. Franklin State Bank & Trust Co., 186 La. 623, 173 So. 126 (1937); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956).
Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956), involved a similar fact situation as the instant case. The Thigpen husband, as the named beneficiary, received life insurance proceeds on the life of his son during the community regime. Upon divorce, Mrs. Thigpen claimed one-half of the proceeds as community property. With little analysis, the Thigpen court adopted the principles applied to the situation where life insurance is taken out in favor of the insured's estate. Id. at 21. However, the cases in which life insurance is taken out in favor of the insured's estate involve significant distinctions from the situation where life insurance is taken out in favor of an individual. The application of codal principles to proceeds in cases where the insured's estate is named as beneficiary does not interfere with the contractual right of the beneficiary to receive proceeds. When the insured names his estate, the proceeds must devolve accordingly and may not stay in the estate indefinitely. The estate is not a person and cannot keep the proceeds, nor does the insurance contract provide the manner in which the executor or estate should distribute such funds. Thus, it is consistent with the contractual intent to apply codal principles of community property and succession *186 law to the proceeds left to the estate of the insured. In the instant case, however, the beneficiary is a named individual. Thus, the right to ownership of the proceeds should devolve in accordance with the contract provisions which are clear and unambiguous.

CONCLUSION
We therefore hold that the right to life insurance proceeds are sui generis and not governed by the codal principles. Accordingly, life insurance proceeds go to the named beneficiary in accordance with the provisions of the life insurance contract, without regard to community claims and, as such, are the separate property of the named beneficiary spouse.

DECREE
For the reasons assigned, the judgments of the lower courts are affirmed.
AFFIRMED.
NOTES
[1] According to the stipulation, the parties agreed that if the court determines the asset to be the separate property of Susan M. Fowler, no further accounting or monies are due Claude Ed Fowler. Thus, we need not address the issue of whether Claude Ed Fowler is due reimbursement.